UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| RON STUART MARTIN | CIVIL ACTION NO. 09-1248-LC |
| | SECTION P |
| VS. | |
| | JUDGE TRIMBLE |
| VERNON PARISH SHERIFF'S OFFICE, ET AL | MAGISTRATE JUDGE KAY |

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. § 1983) filed *in forma pauperis* on July 22, 2009, by *pro se* plaintiff, Ron Stuart Martin.  Plaintiff is a pre-trial detainee and he is housed at Vernon Parish Jail (VPJ) in Leesville, Louisiana.  He names the following as defendants: Vernon Parish Sheriff's Office; Vernon Parish Sheriff John S. Craft; Vernon Parish Police Jury; and, Louisiana Department of Public Safety and Corrections Secretary James LeBlanc.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

### *Background*

Plaintiff's original complaint very broadly claimed that VPJ had violated a number of his civil rights.  Among these were the overcrowding of inmates resulting in them sleeping on the floor; being served an unhealthy diet; the lack of the opportunity to exercise and to go outside; taking of personal property during cell searches; excessively cold temperatures in the cells; legal mail being opened; the denial of medical services; use of excessive force; and the lack of

response to grievances.

Based on the insufficient information contained in plaintiff's original petition, this court issued a memorandum order, directing plaintiff to amend his complaint and cure the noted deficiencies. Doc. 13. In the memorandum order, plaintiff was advised, among other things, that he needed to plead specific facts to comply with the provisions of Rule 8 of the Federal Rules of Civil Procedure. He was also informed that in regard to his conditions of confinement claims, he must allege facts which satisfy both an objective (sufficiently serious deprivation) and subjective (sufficiently culpable state of mind) component. Along these lines, plaintiff was advised that his claims (namely, medical care, food, sleeping conditions, exercise, and mail issues) did not rise to the level of a constitutional violation. Likewise, plaintiff was informed that his claims regarding his personal property, grievances, and use of force were insufficient to state a claim. He was also advised that as to the defendants named in their supervisory capacity, he must allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by those defendants. Finally, plaintiff was advised that neither the Vernon Parish Policy Jury nor the Vernon Parish Sheriff's Office were juridical entities capable of being sued.

Plaintiff filed a response to the memorandum order on January 22, 2010. Doc. 14. He also filed attachments to the response. These additional documents provided the court with some but not all of the requested information.

*Law and Analysis*

1.  *Frivolity Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).  A claim is frivolous if it lacks an arguable basis in law or in fact.  *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).  A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint.  Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint.  *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991).  A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone.  *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).  District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).  A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint."  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Accepting all of plaintiff's allegations as true, the undersigned concludes, for the following reasons, that the complaint should be denied and dismissed with prejudice as frivolous and for failing to state a claim for which relief may be granted.

2.  *Supervisory Liability*

As previously stated, plaintiff sued Louisiana Department of Public Safety and Corrections Secretary James LeBlanc. In the court's amend order, plaintiff was advised that his claims did not establish liability on the part of this defendant. Plaintiff's subsequent filings did not remedy that defect.

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). Plaintiff has not alleged facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by this defendant and his claims against Louisiana Department of Public Safety and Corrections Secretary James LeBlanc should be dismissed.

3.  *Medical Care Claims*

The constitutional right of a pretrial detainee to medical care is based upon the due process guarantee of the Fourteenth Amendment, *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir.2000); a convict's medical care claims are analyzed under the Eighth Amendment. Nevertheless, "[t]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d

545, 548 (5th Cir.2001).   In order to prevail on such claims, plaintiff  must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur.  *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59.  "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference."  *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied).  Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."  *Thompson*, 245 F.3d at 459.  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs.  See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather, supra; Varnado v.  Lynaugh,* 920 F.2d 320, 321 (5th Cir.  1992) citing *Johnson v.  Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).  In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of

the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability.

The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti*, 958 F.2d. 91 (5th Cir. 1992); *Woodall, supra.* Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimensions. *Varnado*, 920 F.2d at 321. See, *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)(A disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference). Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather, supra*.

In the instant case, the information contained in plaintiff's complaint indicates that he has received medical treatment during his time at VPJ, albeit not to his satisfaction. Plaintiff's allegations, at most, state a disagreement between himself and the medical staff regarding the procedures used to treat his medical problems. As previously stated, such claims are insufficient to establish a constitutional violation, and based upon all allegations of plaintiff, the undersigned concludes that the defendants did not act with deliberate indifference to plaintiff's serious medical needs.

Plaintiff's claims do not establish that a constitutional violation has occurred. Absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison. See *Shaw v. Murphy*, 121 S.Ct. 1475 (2001); *Procunier v. Martinez*, 94 S.Ct. 1800 (1974). The decision regarding plaintiff's treatment is best left to the prison officials. The facts

of this matter do not demonstrate that the defendants "refused to treat him, ignored his complaints, intentionally treated [plaintiff] incorrectly or evince a wanton disregard" for plaintiff's medical needs. The evidence before the court simply does not support a finding of deliberate indifference. Accordingly, this court finds that plaintiff's medical care claims should be dismissed for failing to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

*4.     Food Claims*

Plaintiff complains that VPJ serves unhealthy food, not enough fresh vegetables, too much canned corn and cornbread, inadequate amounts of starches, small portions, and other claims regarding meals. In his amended complaint, plaintiff claims that from August 3, 2009 through September 22, 2009, he lost twenty pounds due to inadequate portions of food.

Plaintiff's complaints of an inadequate diet simply fail to set forth a cause of action. As previously stated, in order to establish an Eighth Amendment violation of this sort, an inmate must allege a sufficiently serious deprivation and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to constitute cruel and unusual punishment.

Again, an inmate must establish that a prison official acted with a sufficiently culpable state of mind measured by deliberate indifference, which encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Plaintiff has failed to provide anything more than conclusory allegations regarding the food served by VPJ. Plaintiff's complaints make it clear that he was not denied anything close to a minimal measure of life's necessities. Although on some occasions plaintiff may be hungry after meals, his allegations do not rise to the level of an Eighth Amendment violation.

*5.     Sleeping on the Floor*

Plaintiff claims that due to overcrowding, he was forced to sleep on the floor from May 3, 2009, through July 6, 2009. He alleges that he has experienced back and leg pain as a result.

Plaintiff's complaints of sleeping on the floor do not establish that he suffered a sufficiently serious deprivation – one in which he was denied the minimal civilized measure of life's necessities. Only those such deprivations are sufficiently grave to constitute cruel and unusual punishment. Nor has plaintiff shown that the defendants acted with deliberate indifference which encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Plaintiff's allegations do not rise to the level of an Eighth Amendment violation.

### 6.    G*rievances*

Plaintiff complains that his grievances were not responded to despite the fact that VPJ has a grievance procedure. He also claims that he just recently discovered that a non-response to a grievance gives an inmate a right to proceed to the next step(s) in the grievance process. Regardless, such allegations do not implicate the constitution.

"[W]hen the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right to access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Oladipupo v. Austin*, 104 F. Supp.2d 626, 637, citing, *Flick v. Alba, et al,* 932 F.2d 728 (8th Cir. 1991). The narrowing of prisoner due process protection announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), leaves plaintiff without a federally protected right to have his complaints and grievances investigated and resolved. Inasmuch as the result of these complaints and grievances have no bearing on the duration of plaintiff's confinement, plaintiff cannot show the existence of a state created liberty interest in their investigation and ultimate

resolution. See *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995).

In sum, as plaintiff does not have a constitutional right to have his grievances entertained, it follows that the defendants did not have a duty to take action with regard to plaintiff's grievances. Consequently, any argument by plaintiff that failure to answer his grievances violates his constitutional rights lacks an arguable basis in law and should be dismissed as frivolous as such claims are not cognizable under §1983.

## 7. *Personal Property*

Plaintiff also claims that personal property has been illegally taken from his cell. As to these allegations, the Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amendment XIV. However, jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under §1983. In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Supreme Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts. *Id.* Although a prisoner may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford the prisoner a remedy. *Daniels,* 474 U.S. at 335, 106 S.Ct. at 667. Even in instances where intentional deprivation occurs, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. *Hudson v. Palmer*, 468 U.S. 517,

104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). This principle, known as the *Parratt/Hudson* doctrine, rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that unauthorized deprivations occurred when items of personal property were misplaced, stolen, or thrown out. If adequate state law remedies are available, no further due process is required under the Constitution.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort (conversion) committed by employees of VPJ. See, La. Civil Code, Article 2315. This provision of state law which is the general tort provision of the Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992). Even a liberal construction of plaintiff's allegations fails to support a Fourteenth Amendment violation.

8. ***Legal Mail***

In his original complaint, plaintiff claims that his constitutional rights were violated when his legal mail was tampered with or opened. Plaintiff did not address this claim in his amended complaint despite being advised by the court that his claims, as stated, did not rise to the level of a constitutional violation.

To establish a constitutional violation based upon the interference with prisoner mail, the prisoner must state a cognizable claim either for denial of the right to free speech or a denial of access to the courts. *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993); *Walker v. Navarro County*, 4 F.3d 410, 413 (5th Cir. 1993). To state a valid constitutional claim under § 1983 for denial of access to the courts due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action. Accordingly, plaintiff must sustain an actual injury as a result, of the alleged interference. See *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999).

Prisoners are guaranteed the right of access to the courts by the United States Constitution; however, in this action, plaintiff's claims do not rise to the level of a constitutional violation. In *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977), the Supreme Court held that prisoners have a fundamental constitutional right to "adequate, effective, and meaningful" access to the courts. See also, *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), cert. denied, 522 U.S. 995 (1997). A prisoner's right of access is not unlimited, "it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." '*Id*. at 310-311 (quoting *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606 (1996)).

In *Lewis v. Casey*, the Supreme Court found that the right of access to the courts does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. 116 S.Ct. at 2182. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.

Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration. *Id*. Further, prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims. See *Lewis*, at 2182, ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement."). "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821. See also *Lewis v. Casey*, 518 U.S. at 349-355, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

      The Supreme Court in *Lewis*, explained that before an inmate may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate that the suffered "actual injury," i.e. that the denial of access "hindered his efforts to pursue a legal claim." 518 U.S. at 351. See also, *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir.1998); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998) (without proving actual injury, the prisoner/plaintiff cannot prevail on an access-to-courts claim); *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir.1991)(A civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.), cert. denied, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992)(If a litigant's position is not prejudiced by the claimed violation, his claim of denial of access to the courts is not valid).

      In the instant case, plaintiff has not demonstrated that defendant's alleged actions

hindered his ability to pursue a legal claim. Accordingly, absent any cognizable injury or prejudice, plaintiff cannot raise a claim of denial of access to the courts and his claims are recommended dismissed for failing to state a claim upon which relief can be granted pursuant to 28 U.S. C. § 1915A(b)(1).

9.     *Use of Force*

In his original complaint, plaintiff makes a broad statement that "[j]ailor's frequently engage in acts of police brutality against prisoners . . . often spraying prisoners with mace as punishment. A restraint chair is used and inmates are left in it for hours." Plaintiff does not state whether he has been subjected to such treatment.

In his amended complaint, plaintiff states that on or about October 20, 2009, the entire jail was subjected to the spraying of a can of mace. He states that he choked for twenty minutes, was not allowed to shower, and was not checked by the medical officer. However, plaintiff does not inform the court as to whether he was involved in the incidents which prompted the spraying or whether he was written up and convicted of disciplinary rules violations, or criminal charges, as a result of these incidents.[1]

Plaintiff's claims in this regard fall within the gambit of the Eighth Amendment's prohibition against cruel and unusual punishment. This prohibition forbids deliberate indifference to the serious health and safety needs of prison inmates. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed. 251 (1976). In order to prevail on such a claim, an inmate must prove objectively that he was exposed to a substantial risk of harm, and that prison officials acted or failed to act with deliberate indifference to that risk. *Farmer v. Brennan*, 511 U.S. 825,

---

[1] Under those circumstances, his claims may be barred if the disciplinary or criminal convictions have not yet been overturned or called into question. See *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); see also, *Edwards v. Balisok*, 520 U.S. 641, 648-49, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (A "conviction" for purposes of the *Heck* analysis includes a ruling in a prison disciplinary proceeding.)

114 S.Ct. 1970, 1977, 128 L.Ed. 2d 811, 823 (1994).

The deliberate indifference standard is a subjective inquiry.  The claimant must establish that the prison officials were actually aware of the risk, yet consciously disregarded it.  *Id.* at 837, 839;  *Lawson v. Dallas County,* 286 F. 3d 257, 262 (5th Cir. 2002); *Herman v. Holiday*, 238 F.3d 660 (W.D. La. 2001)(*quoting, Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  It is only the deliberate indifference and unnecessary and wanton infliction of pain or acts that are repugnant to the conscience that constitute conduct proscribed by the Eighth Amendment.  *Estelle,* 429 U.S. at 104-106.  Liability occurs only if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk.  *Farmer,* 511 U.S. at 847.  Accordingly, negligence and even gross negligence does not implicate the Constitution and does not provide a basis for a §1983 claim.  *Id*. at 1978 ("deliberate indifference entails something more than mere negligence...").

The malicious and sadistic use of force to cause harm violates contemporary standards of decency; however, not every malevolent touch, push, or shove by a prison guard gives rise to a federal cause of action. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).  A use of force which is not "repugnant to the conscience of mankind," *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986), is excluded from the Eighth Amendment's prohibition of cruel and unusual punishment and is considered to be *de minimis*. As plaintiff acknowledged in his amended complaint, the use of force may sometimes be justified in a prison setting.  None of plaintiff's allegations support a finding that the spraying of mace was not justified.

Further, such Eighth Amendment claims are not actionable unless there is a showing of physical injury resulting from the allegedly unconstitutional conduct.  To be actionable, the

injury need not be significant, but it must be more than *de minimis. Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997).

In the instant case, accepting all of the plaintiff's allegations as true, plaintiff has not demonstrated that he suffered a compensable physical injury. Under the circumstances as alleged by plaintiff, there is no probative evidence that plaintiff suffered any physical injury beyond *de minimis* as a result of the incident alleged herein. See, *Siglar,* 112 F.3d at 193 (5th Cir.1997) (bruised ear lasting several days *de minimis* injury). Plaintiff has failed to state a claim of violation of the Eighth Amendment prohibition against cruel and unusual punishment. Consequently, he has failed to state a claim on which relief can be granted, and his claims in this regard should be dismissed.

10.     ***Vernon Parish Police Jury***

Plaintiff's claims against the Vernon Parish Police Jury are not cognizable. More specifically, a "police jury" is a unit of local Louisiana government akin to a county board of supervisors. See La.Rev.Stat.Ann. § 33:1236 (West 1951 & Supp.1985). Despite its name, the police jury does not directly furnish any of the services conventionally associated with the "police." Most of these services are traceable in Louisiana to the sheriff. See id. § 33:1435.

Under Louisiana law, the Police Jury has no responsibility over the daily operation of the jail. However, state law does require the Police Jury to "provide ... a good and sufficient jail," La.Rev.Stat.Ann. § 33:4715, to be "responsible for the physical maintenance of all parish jails and prisons," id. § 15:702, and to pay all expenses incurred in "the arrest, confinement, and prosecution of persons accused or convicted of crimes," id. § 15:304. See *Amiss v. Dumas*, 411 So.2d 1137, 1140-42 (La. App. 1st Cir.) (discussing statutory allocation of prison responsibility), writ denied, 415 So.2d 940 (La.1982).

Clearly the Police Jury had a duty to fund and maintain the jail. Where a municipal body is vested with this sort of fiscal obligation to a jail, its liability for insufficient funding or maintenance will depend on its knowledge of conditions at the jail. Thus, in *Howard v. Fortenberry*, 723 F.2d 1206, vacated in part on other grounds, 728 F.2d 712 (5th Cir.1984), the court held that a police jury could not be held liable under section 1983 for the deaths of two inmates who were placed in a "hot box" in very hot weather. *Id.* at 1208, 1210. In *Howard*, the plaintiffs had produced no evidence that the police jury knew how the box was being used either in general or in that particular instance, nor had the plaintiffs shown that the police jury had a policy permitting such use. *Id.* at 1210. The duty to maintain did not confer on the police jury a duty to inspect the jail. *Id.* at 1211.

Given the limited scope of the police jury's duties, plaintiff's complaint simply does not state a cause of action against this local governmental body.

## 11.    *Vernon Parish Sheriff's Office*

Plaintiff has named the Vernon Parish Sheriff's Office as a defendant. Fed.R.Civ.P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether VPSO has the capacity to be sued in this action.

Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. In Louisiana the Parish Sheriff's Offices are not legal entities capable of suing or being sued. *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D.La.1988). In other words, the State of Louisiana has not granted juridical status to the Vernon Parish Sheriff's Office. Plaintiff's suit

against this non-juridical entity fails to state a claim upon which relief can be granted.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint against Vernon Parish Sheriff's Office; Vernon Parish Police Jury; and, Louisiana Department of Public Safety and Corrections Secretary James LeBlanc be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**IT IS FURTHER RECOMMENDED** that all claims against Vernon Parish Sheriff John S. Craft, with the exception of plaintiff's claims against him in regard to the denial of exercise and outside activities, be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**IT IS ALSO RECOMMENDED** that plaintiff's claims for civil rights violations against defendant Vernon Parish Sheriff John S. Craft in regard to his alleged actions concerning the denial of exercise and outside activities be served in accordance with the court's orders.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by**

**Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** See *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

    **THUS DONE AND SIGNED**, in Chambers, at Lake Charles, Louisiana, this 15th day of June, 2010.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE